SUPREME JUDICIAL COURT 
 
 RAYMOND J. WHITE vs. COMMONWEALTH

 
 Docket:
 SJC-13730
 
 
 Dates:
 June 12, 2025
 
 
 Present:
 
 
 
 County:
 
 

 
 Keywords:
 Supreme Judicial Court, Superintendence of inferior courts. Homicide. Practice, Criminal, Execution of sentence, Stay of proceedings.
 
 

       The petitioner, Raymond J. White, appeals
from a judgment of a single justice of the county court denying his petition
for relief pursuant to G. L. c. 211, § 3.  We affirm.
      Background.  White and a codefendant, James Hall, were
each convicted of two counts of murder in the first degree, as well as armed
robbery, in 1972.  See White v.
Commonwealth, 479 Mass. 1023 (2018). 
Although Hall's convictions were affirmed after a direct appeal, White's
direct appeal was never properly perfected. 
See id. at 1023.  In 2014, White
filed a petition pursuant to G. L. c. 211, § 3, seeking to
reinstate that direct appeal.  See White,
supra.  The court ultimately denied the
petition but concluded that White was "free to proceed in the Superior
Court with a motion for a new trial pursuant to Mass. R. Crim. P. 30
(b)."  Id. at 1027.  In so doing, the court "impose[d]
certain protections" for White's benefit, such that, essentially, White
would have an "unfettered" right to appeal from any denial of a
motion for a new trial, i.e., that he would not have to obtain leave to appeal
from a single justice pursuant to the gatekeeper provision of G. L. c. 278,
§ 33E.  White, supra at 1026.  Additionally, any such appeal, which will
come directly to this court, "will . . . receive the benefit of
our plenary review . . . pursuant to G. L. c. 278, § 33E,
just as [it] would have on a direct appeal."  Id. at 1027.
      White eventually filed a motion for a new
trial in the Superior Court, in July 2023. 
In January 2024, with that motion still pending, he also filed, in the
trial court, a motion for a stay of further execution of his sentence.  After a hearing, a judge denied the motion,
in November 2024.  White then filed his
petition in the county court, seeking relief from the denial of the motion to
stay, which a single justice denied. 
After White's appeal from the single justice's judgment was entered in
this court, the trial court denied the motion for a new trial, in March
2025.  White has timely filed a notice of
appeal from that judgment.[1]
      Discussion.  The single justice had the authority to
review the trial court judge's denial of the motion to stay for an abuse of
discretion or to consider the matter de novo. 
See Commonwealth v. Nash, 486 Mass. 394, 410 (2020).  She chose to review the decision for an abuse
of discretion and found none, concluding that the judge did not abuse his
discretion in denying the motion to stay on the basis that White failed to show
that the new trial motion offered a reasonable possibility of success.  We, in turn, review the single justice's
ruling under the same standard, that is, for error of law or abuse of
discretion, see id. at 412, and, similarly, find none.
      A judge considering a defendant's motion
for a stay of execution of a sentence pending appeal must evaluate two
factors:  the defendant's likelihood of
success on appeal and whether the defendant's release would pose a security risk.  See, e.g., Nash, 486 Mass. at 403-405.  Here, the judge concluded that White does not
pose a security risk, a point that the Commonwealth does not dispute.  We turn, therefore, to the issue of White's
likelihood of success on appeal.
      In concluding that White did not have a
likelihood of success on appeal, the judge focused on the three issues that
White himself highlighted in his motion to stay:  that the Commonwealth deliberately failed to
disclose that it had made a deal with a codefendant, L.C. Clayton, in exchange
for Clayton's testimony at trial; that the jury instruction on reasonable doubt
was constitutionally infirm; and that White, along with Hall, was seated in a
"prisoner's dock" for trial.
      As to the first issue, the judge noted
that Clayton's testimony largely concerned Hall, and that Clayton "had
little to say" that incriminated White. 
To the extent that Clayton testified, for example, that Clayton saw
White and Hall at White's sister's apartment after the murder, the police
themselves saw White there too. 
Moreover, the judge observed that Clayton's testimony was largely
consistent with White's own testimony. 
While it may be true that White's defense counsel would have
cross-examined Clayton more extensively had he known about Clayton's deal with
the Commonwealth, the effect of Clayton's testimony, while damaging to Hall,
was ultimately not damaging to White.  In
the judge's reasoned view, then, even if the Commonwealth did improperly fail
to disclose evidence of the Commonwealth's deal with Clayton, it was not
prejudicial to White.  The judge did not
abuse his discretion in concluding that White thus did not have a likelihood of
success on appeal on this issue.
      As to the two other issues that the judge
highlighted -- whether the reasonable doubt instruction was constitutionally
infirm and whether seating White in a prisoner's dock violated his right to due
process -- the judge noted that because both issues were relevant to Hall's
direct appeal, this court would have necessarily considered them in the course
of its G. L. c. 278, § 33E, plenary review of Hall's
convictions.  That the court found no
error as to either issue with respect to Hall applies with equal force, in the
judge's view here, as to White.
      White argues, however, that the judge
cannot simply rely on Hall's direct appeal and that, in any event, the judge
failed to account for any changes in the law since the time of Hall's direct
appeal.  The Commonwealth, in turn,
argues that the judge was considering the issues pursuant to the law as it
existed only up to a fixed point in time. 
White escaped from custody in 1980 and was not returned to custody until
1988.  During that time, White's then-pending
motion for a new trial was dismissed with prejudice on the basis that White had
abandoned the motion when he escaped. 
Therefore, the Commonwealth suggests, only changes in the law up to the
time of White's escape, in 1980, would even be potentially applicable.
      As the judge noted, regarding the
reasonable doubt instruction, White did not object to the instruction at trial
and any review is therefore only to determine whether the instruction, if
erroneous, created a substantial likelihood of a miscarriage of justice.  White does not appear to be arguing that the
law changed in any relevant way, during the relevant time period, and where
this court would have considered the issue in connection with Hall's appeal,
the judge did not abuse his discretion in concluding that the issue was not a
meritorious one with a reasonable likelihood of success.
      As to the issue of the prisoner's dock,
White is correct that the law did change, in 1979.  In Commonwealth v. Moore, 379 Mass. 106
(1979), this court held that a defendant's request to sit with counsel should be
allowed unless valid reasons of security, delineated in the record, required
otherwise.  See id. at 111.  Although it appears that White is entitled to
the benefit of the change in the law (because at the time he had a validly
pending motion for a new trial, prior to his 1980 escape from custody), he does
not argue that he requested to sit with counsel.  Even if seating White in a prisoner's dock
violated his due process rights, we cannot say that, again in the context of
this case where the evidence against White was strong, the error would have
created a substantial likelihood of a miscarriage of justice.  The issue, in short, is not one that suggests
a likelihood of success on appeal, for purposes of the motion to stay.
      Conclusion.  For all these reasons, the single justice did
not err or abuse her discretion in denying relief pursuant to G. L.
c. 211, § 3, on the basis that the trial court judge did not abuse
his discretion in denying White's motion for a stay of further execution of his
sentence.
Judgment
affirmed.
      The case was submitted on briefs.
      Cathryn A. Neaves for the petitioner.
      Kyle Siconolfi, Assistant District
Attorney, for the Commonwealth.

footnotes

[1] After the
judge ruled on the motion for a new trial, White submitted a letter to the
court stating that the ruling does not render his appeal from the single
justice's judgment regarding the underlying motion to stay moot.  We invited the parties each to submit a
memorandum on the mootness issue.  White
thereafter filed a memorandum in which he argued that his appeal is not moot
because, essentially, the underlying motion for a stay remains live pending the
appeal from the denial of his motion for a new trial.  In the unique circumstances of this case, we
will consider the appeal.
      As noted above, White's appeal from the
denial of the motion for a new trial will be treated in this court essentially
as a direct appeal.  See White,
479 Mass. at 1027.  The fact that
the trial court has now denied the motion for a new trial does not alter the
relevant underlying considerations on the motion to stay.  See Commonwealth v. Charles, 466 Mass. 63, 77
(2013).  "[T]he factors that shall
be evaluated in deciding whether to allow a defendant's motion for a stay of
the execution of his sentence pending the disposition of a new trial motion are
the same as those relating to a stay of execution of sentence pending
appeal."  Id.